# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM VICTOR | : | Civil No. 3:08-CV-1374 |
| Plaintiff | : | (Judge Nealon) |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| R.M. LAWLER, et al., | : | |
| Defendants. | : | |

## MEMORANDUM AND ORDER

THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:

This case is one of two prisoner civil rights lawsuits currently lodged by the plaintiff, William Victor, against correctional staff at SCI Huntingdon. See Victor, et al. v. Lawler, et al., No. 3:07-CV-2058 and Victor v. Lawler, et al., No. 3:08-CV-1374. In this initial lawsuit, Victor, et al. v. Lawler, et al., No. 3:07-CV-2058, Victor and another inmate-plaintiff, Demetrius Bailey, leveled a series of allegations against correctional staff during a time period which spans through November 2007. In the second lawsuit, Victor v. Lawler, et al., No. 3:08-CV-1374, Victor alleges, *inter alia*, that he was the victim of staff assaults in May and June 2008, after the filing of his first lawsuit.

Both of these cases have been referred to the undersigned for pre-trial management. In connection with the pre-trial management of these two cases, we are

addressing various pending motions filed in both cases, and using this opportunity to attempt to provide clarity regarding the properly framed issues in these two cases.

With respect to the plaintiff's second case, Victor. v. Lawler, et al., No. 3:08-1374, currently there is a fully briefed motion by Victor for sanctions, for other relief related to alleged spoliation of evidence, and to compel production of materials. (Doc. 169) A review of the motion, (Doc. 169 ), accompanying briefs, (Doc. 183), and the defendants' response in opposition to this motion (Doc. 177), reveals that this motion relates to three categories of evidence pertaining to Victor's claims that his constitutional rights were violated when he was allegedly subjected to physical assaults by prison staff in May and June, 2008. Each of these three categories of evidence is discussed separately below:

### A.     Disclosure of Pre-Disciplinary Conference Records

First, Victor's pleadings note, without objection or contradiction by the defendants, that the June 2008 assault on him was the subject of disciplinary proceedings conducted by the Department of Corrections. Victor also observes that this assault was the subject of a separate inquiry by the Office of Professional Responsibility (OPR) which he alleges made a criminal referral to a district attorney's office as a result of its review of the facts surrounding this institutional assault. After noting that he had previously sought OPR records relating to the investigation of this

assault, in his current motion Victor now seeks unredacted copies of the Department of Corrections pre-disciplinary conference records relating to the corrections defendants who were allegedly the subject of internal agency disciplinary inquiries as a result of their alleged involvement in this incident. (Doc. 169)

In response to this particular request the defendants have offered to provide Victor an opportunity to review redacted copies of these employee pre-disciplinary conference records., (Doc. 177), but have asserted that "personal information" and agency conclusions and recommendations should be redacted from these documents. (Id.) According to the defendants, the approach which the defendants is proposing the Court take with respect to pre-disciplinary records mirrors the approach previously taken by the Court in this litigation with respect to an OPR investigative report relating to this alleged assault. (Docs. 92, 119.)

We agree that the release of redacted materials, which delete personal information, such as social security numbers, as well as agency conclusions and recommendations is the appropriate course to take in this matter. In this regard we note that this was the course followed previously in this litigation. (Docs. 92, 119.) Moreover, we find that the deletion of personal information from these records is necessary, appropriate and consistent with prior case law. See Paluch v. Dawson, No. 06-1751, 2007 WL 4375937 (M.D. Pa. Dec. 12, 2007).

We also conclude that adopting this course is consistent with settled case law addressing claims of governmental privilege relating to investigative records which acknowledges a governmental privilege but recognizes that courts must balance the confidentiality of governmental files against the rights of a civil rights litigant by considering:

> (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any intra-departmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiffs suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and, (10) the importance of the information sought to the plaintiffs case.

Frankenhauser v. Rizzo, 59 F.R.D. 339, 344 (E.D. Pa. 1973). When striking this balance courts have, in the past, reconciled the competing needs of civil rights litigants for information regarding facts developed in official investigations, with the Government's need to protect its deliberative processes, by directing the release of non-privileged, factual information in a report to the plaintiff. For example, in Sullivan v. Pa. Dep't of Corrections, 2007 U.S. Dist. LEXIS 19216, *1-2 (M.D. Pa.

2007) (McClure, J.), the Court limited discovery of a report regarding an investigation by the OPR concerning allegations made by two former prison psychologists, holding that, after weighing the parties' interests, only certain *non-privileged* material contained in the investigation report was discoverable under Rule 26. Id. at *9.

We will follow the same course here but will add one further measure out of an abundance of caution. While we recognize that *in camera* inspection of these materials is not legally required, see Barris v. City of Philadelphia, 1995 U.S. Dist. LEXIS 7908, *23-24 (E.D. Pa. 1995); Fed.R.Civ.P. 26(b)(5)(A), in the exercise of our discretion we will direct: (1) that the defendants provide the plaintiff with an opportunity to review redacted reports relating to the pre-disciplinary records of the defendants, which have redacted personal information along with agency recommendations and conclusions; and, (2) will also instruct the defendants to provide the court with complete sets of the redacted, and unredacted reports, for our *in camera* review. In adopting this course we note that we are following a practice which this court has, in the exercise of its discretion, employed in the past as an additional measure to ensure that the balance between the interests of the litigants has been struck in an appropriate fashion when addressing similar discovery disclosures in a prison setting. See, e.g., Paluch v. Dawson, No. 06-175, 2008 WL 2785638

(M.D. Pa. July 17, 2008); Solan v. Ranck, No. 06-49, 2007 WL 763073 (M.D. Pa. March 8, 2007); Hamilton v. Byrd, No. 98-833, 2001 WL 290355 (M.D. Pa. Feb. 21, 2001). By adopting this approach, we can ensure a limited, and appropriate release of information to the plaintiff, while protecting important interests in personal privacy and confirming the proper scope of any government privilege claims and reserving the right to direct the further release of information once we have compared the redacted and unredacted texts.

### B. Disclosure of Prison Operations Manuals

The second issue presented by Victor's motion relates to prison policy and procedure manuals. Specifically, in his motion Victor requested copies of the Department of Corrections Policy Manuals 6.5.1 and 6.3.1, which deal with facility safety and security matters. Victor's initial request (Doc. 169) was unaccompanied by any detailed explanation of the relevance of this information to his lawsuit or any limitations in terms of the scope of the request, factors which led the defendants to object to this request, (Doc. 177) citing the justiable security concerns that the institution would have releasing these sensitive operations manuals to an inmate.

In response to these well-grounded concerns of the defendants, Victor has narrowed and refined his request in the reply brief which he has filed. (Doc. 183.) That reply brief explains that Victor is seeking limited information which is directly

relevant to his spoliation argument involving what are alleged to been missing prison tapes relating to Victor's June 28, 2008 cell extraction, an incident in which it is alleged that Victor's jaw was broken, and relating to the subsequent medical treatment provided to Victor immediately after this cell extraction. Focusing on this incident, and the medical treatment which followed, Victor asserts that he is only seeking those portions of the procedure manuals which provide instruction and guidance on documenting cell extractions and preserving video evidence of those cell extractions. This much narrower request seeks evidence that may be relevant to a fully-informed assessment of Victor's spoliation claims relating to what are conceded to be missing videos from the time period of the cell extraction episode.(Doc. 183.) If a review of these policy statements indicates that the missing tapes were not handled in accordance with departmental policies, Victor's spoliation claim may be strengthened considerably. On the other hand, if a review of pertinent prison policies reveals that the defendants followed their own policies when they destroyed, discarded, or recycled these tapes, then the defendants' argument that this episode does not warrant spoliation sanctions gains greater vitality.[1]

---

[1] Of course in the final analysis, a determination of this spoliation issue entails review of a host of factors in addition to the agency's record retention policies. See pages 10-13 infra. Thus, this information, while perhaps probative, is not necessarily determinative of this issue.

With its scope narrowed in this fashion, Victor's request is tailored, and more reasonably calculated, to lead to discoverable evidence under Rule 26 of the Federal Rules of Civil Procedure , which authorizes "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense" and further defines relevant evidence in the following terms: "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

It is well-recognized that issues relating to the scope of discovery permitted under the Rules are to be resolved, almost exclusively, at the discretion of the Court. Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 90 (3d Cir. 1987). A court's decisions regarding the conduct of discovery will be disturbed only upon a showing of an abuse of discretion. Marroquin-Manriquez v. I.N.S., 699 F.2d 129, 134 (3d Cir. 1983).

This discretion is guided, however, by certain basic principles. Thus, at the outset, it is clear that Rule 26's broad definition of that which can be obtained through discovery reaches only "**nonprivileged matter** that is relevant to any party's claim or defense". Therefore, valid claims of privilege still cabin and restrict the court's discretion in ruling on discovery issues. Recognizing this fact, when addressing inmate requests for access to prison policy manuals, courts have reconciled the

interests of inmate-plaintiffs and corrections officials by rejecting broadly framed requests for access to policy manuals, see Paluch v. Dawson, No. 06-1751, 2007 WL 4375937, *4-5 (M.D. Pa. Dec. 12, 2007), while conducting an *in camera* review of prison policy manuals which may be relevant to more narrowly tailored discovery demands. Paluch v. Dawson, No. 06-175, 2008 WL 2785638, *3 (M.D. Pa. July 17, 2008).

This is the course we will adopt here. We will direct the defendants to provide to the Court for its *in camera* inspection the full text of these policy manuals, along with redacted text from these policy manuals relating specifically to the Department of Corrections' policies pertaining to documentation of cell extractions and preservation of evidence relating to such episodes, including preservation of videotapes. Armed with this information the Court can determine: (1) whether this information is relevant to the issues raised in this case; (2) whether it is subject to any valid claim of privilege recognized by the Federal Rules; and, (3) to what extent, in what format, and under what conditions it may be released to the plaintiff.

### C. Spoliation Sanctions–Missing Prison Tapes

Finally, in his motion, Victor seeks spoliation sanctions, including costs and a spoliation inference instruction at trial, as a penalty for what he alleges was the deliberate destruction of prison videotapes which he claims would have documented

some of the allegations which he has made in this lawsuit. (Docs. 169, 183) In response, the defendants concede that some tapes could not be found, and apparently were destroyed, but argue that spoliation sanctions are inappropriate here because there is insufficient evidence to justify a finding of deliberate or negligent spoliation of evidence. (Doc. 177.)

We will defer a ruling on this aspect of Victor's motion at this time. We take this action, in part, because we regard the question of spoliation to be closely intertwined with the issue of whether the defendants followed their own operations procedures in preserving evidence relating to the June 2008 cell extraction of the plaintiff. Since the resolution of this threshold question may add clarity to the analysis of this spoliation claim, we will defer any final ruling on the spoliation issue, pending the defendants' compliance with our instructions to provide the pertinent agency manuals, in redacted and unredacted formats, for our *in camera* review. We will, however, briefly note for the parties the legal standards which shape and frame this analysis.

We begin with the familiar proposition that evidentiary rulings, including rulings regarding whether a spoliation inference is appropriate, rest in the sound discretion of the court. Ward v. Lamanna, 334 F.App'x 487, 492 (3d. Cir. 2009). That discretion is guided, however, by settled legal tenets, tenets which define both the

fundamental nature of spoliation and the appropriate sanctions for acts of spoliation. "Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation. Mosaid Techs., Inc. v. Samsung Elecs. Co., Ltd., 348 F.Supp.2d 332, 335 (D.N.J.2004)." Fortune v. Bitner. No. 01-111, 2006 WL 839346, *1 (M.D.Pa. March 29, 2006); see Ogin v. Ahmed, 563 F.Supp.2d. 539, 542 (M.D. Pa. 2008). In assessing a spoliation claim:

> [R]elevant authority requires that four (4) factors be satisfied for the rule permitting an adverse inference instruction to apply: 1) the evidence in question must be within the party's control; 2) it must appear that there has been actual suppression or withholding of the evidence; 3) the evidence destroyed or withheld was relevant to claims or defenses; and, 4) it was reasonably foreseeable that the evidence would later be discoverable. Mosaid, 348 F.Supp.2d at 336 citing Brewer, 72 F.3d at 334; Scott v. IBM Corp., 196 F.R.D. 233, 248-50 (D.N.J.2000); Veloso v. Western Bedding Supply Co., 281 F.Supp.2d 743, 746 (D.N.J.2003). Additionally, the Untied States District Court for the District of New Jersey recognized: "While a litigant is under no duty to keep or retain every document in its possession, even in advance of litigation, it is under a duty to preserve what it knows, or reasonably should know, will likely be requested in reasonably foreseeable litigation." Mosaid, 348 F.Supp.2d at 336 (quoting Scott, 196 F.R.D. at 249).

Ogin, 563 F.Supp.2d at 543.

Thus, "[a] party which reasonably anticipates litigation has an affirmative duty to preserve relevant evidence. Baliotis v. McNeil, 870 F.Supp. 1285, 1290 (M.D.Pa.1994). Where evidence is destroyed, sanctions may be appropriate, including

the outright dismissal of claims, the exclusion of countervailing evidence, or a jury instruction on the 'spoliation inference.' This inference permits the jury to assume that 'the destroyed evidence would have been unfavorable to the position of the offending party.' Schmid v. Milwaukee Elec. Tool Corp., 13 F.3d 76, 78 (3d Cir.1994)." Howell v. Maytag, 168 F.R.D. 502, 505 (M.D.Pa. 1996)

If the court finds that there is a culpable destruction or spoliation of evidence, the question then becomes determining the appropriate sanction for this act of spoliation. In this respect:

> The United States Court of Appeals for the Third Circuit has applied three (3) key considerations to determine whether a sanction for spoliation of evidence is appropriate. Schmid, 13 F.3d at 79. The considerations are: 1) the degree of fault of the party who altered or destroyed the evidence; 2) the degree of prejudice suffered by the opposing party; and, 3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future. Id. When appropriate, a court may impose any potential sanction including: 1) dismissal of a claim or granting judgment in favor of a prejudiced party; 2) suppression of evidence; 3) an adverse inference, referred to as the spoliation inference; 4) fines; and, 5) attorneys' fees and costs. Mosaid, 348 F.Supp.2d at 335.

Ogin, 563 F.Supp.2d at 545.

Thus, as we await compliance with the other aspects of this order, we will also invite the parties to submit supplemental briefs on the spoliation issue, in light of the Court's assessment of the controlling legal standards that guide our judgment here.

Accordingly, this 9th day of February 2010, in accordance with this memorandum , IT IS ORDERED that the plaintiff's motion to compel (Doc. 169) is GRANTED in part and DENIED in part as follows:

1. With respect to the plaintiff's request for Disclosure of Pre-Disciplinary Conference Records, in the exercise of our discretion IT IS ORDERED as follows: (1) that on or before **February 24, 2010**, the defendants shall provide the plaintiff with an opportunity to review redacted reports relating to the pre-disciplinary records of the defendants, which have redacted personal information along with agency recommendations and conclusions; and, (2) will also provide the court with complete sets of the redacted, and unredacted reports, for our *in camera* review.

2. With respect to the plaintiff's request for Disclosure of Prison Operations Manuals IT IS ORDERED that on or before **February 24, 2010** the defendants shall provide to the Court for *in camera* inspection the full text of these policy manuals, along with redacted text from these policy manuals relating specifically to the Department of Corrections' policies pertaining to documentation of cell extractions and preservation of evidence relating to such episodes, including preservation of

videotapes. Armed with this information the Court can determine: (1) whether this information is relevant to the issues raised in this case; (2) whether it is subject to any valid claim of privilege recognized by the Federal Rules; and, (3) to what extent, in what format, and under what conditions it may be released to the plaintiff.

3. With respect to the plaintiff's request for Spoliation Sanctions, a ruling is deferred pending receipt of the *in camera* submission of the defendants, but the parties are invited to submit any supplemental briefs relating to this issue on or before **February 24, 2010.** Following its review of these materials that the defendants have been directed to submit, the Court may, in its discretion, direct further briefing and proceedings on the issue of spoliation.

*S/Martin C. Carlson*
**United States Magistrate Judge**