IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| WILLIAM VICTOR, | : | NO. 3:08-CV-01374 |
| --- | --- | --- |
| Plaintiff, | : | (Judge Nealon) |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| R.M. LAWLER, et al., | : | |
| Defendants. | : | |

**MEMORANDUM OPINION AND ORDER**

**I.     Statement of Facts and of the Case**

This is a civil rights action brought by William Victor, an inmate who was formerly confined in the State Correctional Institution at Huntingdon ("SCI-Huntingdon"). In his complaint, Victor, who is proceeding *pro se,* has named an array of defendants, including the prison Superintendent and other employees of the Pennsylvania Department of Corrections at SCI-Huntingdon. Victor alleges that on June 28, 2008 he was assaulted by Corrections Officers while being moved between cells in the Restricted Housing Unit ("RHU") at SCI-Huntingdon. Attachment to Plaintiff's Amended Complaint at ¶ 6. In addition to these assault claims, Victor also alleges that prison staff have engaged in retaliation, harassment, retaliatory misconducts, denial of yard and shower privileges, and destruction of his personal property and legal mail; id. at ¶¶ 2-3, 5, 8, and claims that he was deprived of his due

process rights during prison disciplinary proceedings by denying him witnesses in the course of inmate misconduct hearings. Id. at ¶ 4. Victor seeks monetary damages and injunctive relief as a result of these alleged violations of his civil rights.

As a *pro se* litigant Victor has been diligent and prolific in asserting his right to discovery. Indeed, it appears that Victor has submitted multiple, and sometimes overlapping, requests for information to the corrections defendants on January 10, 2010, as well as on February 23, 24 and 25, 2010. The corrections defendants have been equally diligent in their responses to these requests, disclosing a wide array of information to Victor over time.

Despite this mutual diligence by both parties, Victor has now filed a motion to compel, (Doc. 239), which seeks further disclosures and sanctions against the defendants. In his motion Victor seeks access to a variety of information relating to his case, including medical records, investigative reports, prison policy statements, other documents and tangible objects, photographs, and information concerning the whereabouts of potential witnesses. The defendants, in turn, have responded to these multi-faceted requests in detail, providing answers which fall into the following five categories:

First, with respect to many of Victor's requests, the defendants report that they have provided all responsive materials in their possession to Victor, while pledging

2

to continue on-going efforts to identify and supplement discovery responses.

Second, as to certain categories of material, the defendants assert that a diligent search has been conducted, and the materials sought by Victor cannot be found or do not exist.

Third, with respect to Victor's own medical records, the defendants have stated that they are prepared to provide Victor copies of those records, in accordance with Department of Corrections policies.

Fourth, as to investigative reports, the defendants state that the factual assertions in those reports have been released to Victor, but assert a claim of privilege over any investigative conclusions or recommendations set forth in those reports.

Finally, in two instances the corrections defendants have objected to specific discovery requests propounded by Victor, alleging that Victor's requests are overly broad.

This discovery dispute has been fully briefed by the parties (Docs. 239, 240, 260, and 268), and is now ripe for resolution. While many of the issues raised by Victor in his discovery motion are without merit, and will be denied, we find that Victor may be entitled to some very limited relief. Accordingly, the motion to compel is DENIED in part and GRANTED in part, as set forth below.

## II. **Discussion**

### A. Rule 26, the Legal Standard

Rule 26(b)(1) of the Federal Rules of Civil Procedure defines both the scope and limitations governing the use of discovery in a federal civil action:

> (1) Scope in General. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)( C ).

This motion, and the defendants' response in opposition to this motion, call upon the Court to exercise its authority under Rule 26 of the Federal Rules of Civil procedure to regulate discovery in this case. Issues relating to the scope of discovery permitted under the Rules rest in the sound discretion of the Court. Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 90 (3d Cir. 1987). A court's decisions regarding the conduct of discovery will be disturbed only upon a showing of an abuse of discretion. Marroquin-Manriquez v. I.N.S., 699 F.2d 129, 134 (3d Cir. 1983).

This discretion is guided, however, by certain basic principles. Thus, at the outset, it is clear that Rule 26's broad definition of that which can be obtained through discovery reaches only "nonprivileged matter that is relevant to any party's claim or defense". Therefore, valid claims of privilege still cabin and restrict the court's discretion in ruling on discovery issues. Furthermore, the scope of discovery permitted by Rule 26 embraces all "relevant information" a concept which is defined in the following terms: "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."

Applying these benchmark standards, we now turn to the discovery requests propounded by Victor.

### B. As To Those Items Which Have Been Disclosed to Victor By the Corrections Defendants There Are No Grounds to Further Compel Discovery

At the outset, we note that, in many instances, the corrections defendants have responded to Victor's motion to compel by noting that they have provided Victor with all of the requested materials, and stand ready to supplement those responses, if necessary.[1] As to these discovery requests, the defendants' explanation that they have

---

[1] For example, the defendants indicate that they have fully responded to the following discovery requests advanced by Victor: Requests Number 12, 13, and 14 set forth in Victor's January 10, 2010 letter and Requests Number 4, 6, 7, and

5

provided all responsive materials in their possession, coupled with their commitment to supplement discovery if they identify further responsive material that has not yet been disclosed, fully satisfies these discovery requests. Therefore, further action by the Court is neither necessary, nor appropriate, with respect to these particular discovery requests.

### C. The Defendants' Assertion That Other Materials Sought By Victor Do Not Exist Also Satisfies Their Discovery Obligations

In addition, the corrections defendants have responded to a number of Victor's requests by advising the plaintiff that the items he seeks either do not exist or cannot be located.[2] While advising Victor that these materials either are non-existent or unavailable, the defendants acknowledge their on-going obligation to supplement these responses in the event that they uncover further, responsive materials in their possession. While Victor's pleadings express a clear skepticism regarding these

---

8 set forth in Victor's February 23 , 2010 letter.

[2]The discovery requests which cannot be responded to because the information sought either does not exist or cannot be located include: Request Number 7 set forth in Victor's January 10, 2010 letter, which sought Psychiatric Monitoring records; Request Number 5 set forth in Victor's February 23, 2010 letter, which also sought Psychiatric Monitoring records; Request Number 1 and 2 set forth in Victor's February 24, 2010 letter, which sought photographs and log book records; and Request Number 1 set forth in Victor's February 25, 2010 letter, which sought digital print outs of a Morse Punch clock.

responses, (Doc. 268), we find that these responses fully address Victor's requests, and we accept the representations that a diligent search has been conducted for the requested materials. We also fully credit the response of counsel that the defendants stand ready to supplement their disclosures should they uncover additional responsive materials as the litigation progresses. Finally, we note that some of these items have been previously released, in substance, to Victor in prior discovery in this case. For example, in his motion Victor seeks additional still photos taken by a GD overhead camera on June 28, 2008, at the time of this cell extraction incident. While the defendants represent that no further still photos exist, they advise that they have disclosed the existing still photo and video photos taken by that camera to the plaintiff.

These responses are clearly adequate, and, therefore, Victor's motion to compel as to these matters will be denied.

### D. **Victor May Review His Own Medical Records Pursuant to Department of Corrections Policies and Procedures**

In this motion, Victor also seeks to review his prison medical records. In response, the defendants note that, with respect to this request, when an inmate initiates a request for production of his own medical records, in accordance with the DC-ADM 003, "Release of Information," the Department's procedure provides a

7

method by which he is given a reasonable amount of time to examine and inspect the requested documents. As part of this procedure, the inmate must initiate this process by submitting Department Form DC-135A "Inmate Request to Staff" to the Superintendent's Assistant or his/her designee at his current institution. The inmate may then review the documents and obtain copies of any documents at his expense; however, charges for the photocopies are made in accordance with the Department's policies and procedures. Thus, we understand that the defendants do not object to Victor's access to his own medical records. Rather, they simply urge the Court to direct Victor to comply with these procedures when requesting medical records.

We believe that compliance with the prison regulations is a fitting and proper procedure for Victor to follow in securing access to these medical records. Indeed, in this regard we note that courts have frequently directed or encouraged inmates to comply with reasonable institutional procedures when securing copies of their own prison medical records for litigation purposes. See, e.g., Bull v. United States, 143 F.App'x 468 (3d. Cir. 2005); Daniels v. Kelchner, No. 05-1601, 2007 WL 2068631 (M.D. Pa. July 17, 2007). Therefore, with respect to this request, it is ordered that

Victor's request be granted, in part, provided that he completes the procedures prescribed by Department of Corrections policies.[3]

---

[3]We note that those policies, in part, call for Victor to bear the cost of making copies of these medical records. While Victor has not made a specific request to have the defendants bear these costs, we note that nothing in 28 U.S.C. § 1915 authorizes federal courts to finance or pay for a party's discovery expenses incurred while prosecuting a lawsuit, even if that party has been granted leave to proceed *in forma pauperis* under 28 U.S.C. § 1915(a). Review of the case law reveals that numerous courts within and without the Third Circuit have recognized the limitations of federal courts to relieve indigent litigants from the costs of pre-trial discovery. See, e.g., Brooks v. Quinn, 257 F.R.D. 515, 417 (D. Del. 2009) ("Although plaintiff is proceeding in forma pauperis, the court has no authority to finance or pay for a party's discovery expenses. . . . It is plaintiff's responsibility to pay for the costs associated with the taking of a deposition."); Augustin v. New Century TRS Holding, Inc., No. 08-326, 2008 U.S. Dist. LEXIS 96236, at *7-9 (W.D. Pa. Nov. 25, 2008) (denying plaintiff's IFP application to cover costs for discovery requests); Badman v. Stark, 139 F.R.D. 601, 605 (M.D. Pa. 1991) (28 U.S.C. § 1915 does not require the government to advance funds for deposition expenses); Toliver v. Community Action Comm'n to Help the Econ., 613 F. Supp. 1070, 1072 (S.D.N.Y. 1985) (no clear statutory authority for the repayment of discovery costs for IFP plaintiff); Sturdevant v. Deer, 69 F.R.D. 17, 19 (E.D. Wis. 1975) (concluding that 28 U.S.C. § 1915 "does not extend to the cost of taking and transcribing a deposition."); Ebenhart v. Power, 309 F. Supp. 660, 661 (S.D.N.Y. 1969) ("Grave doubts exist as to whether [28 U.S.C. § 1915] authorizes this court to order the appropriation of Government funds in civil suits to aid private litigants in conducting pre-trial discovery."); see also Tabron v. Grace, 6 F.3d 147, 159 (3d Cir. 1993) ("There is no provision in [28 U.S.C. § 1915] for the payment by the government of the costs of deposition transcripts, or any other litigation expenses, and no other statute authorizes courts to commit federal monies for payment of the necessary expenses in a civil suit brought by an indigent litigant."). Thus, as a general rule, the Court lacks the lawful authority to help finance, or relieve Plaintiff, who is proceeding *in forma pauperis*, from the costs associated with taking pre-trial discovery.

### E. **Victor Is Not Entitled to Unredacted Investigative Reports**.

In his motion, Victor also renews his prior requests for full, unredacted versions of various investigative reports prepared in connection with internal Corrections Department inquiries into the June 28, 2008 cell extraction incident, including disciplinary proceedings conducted by the Department of Corrections, as well as a separate inquiry by the Office of Professional Responsibility (OPR) which he alleges made a criminal referral to a district attorney's office as a result of its review of the facts surrounding this institutional assault.

In response to this particular request the defendants have offered to provide Victor an opportunity to review redacted copies of these records, but have asserted that personal information and agency conclusions and recommendations should be redacted from these documents. According to the defendants, the approach which they have taken here with respect to these records mirrors the approach previously sanctioned by this Court throughout the course of this litigation.

We agree that the release of redacted materials, which delete personal information, such as social security numbers, as well as agency conclusions and recommendations is the appropriate course to take in this matter. In this regard we note that this was the course followed previously in this litigation. (Docs. 92, 119.) Moreover, we find that the deletion of personal information from these records is

necessary, appropriate and consistent with prior case law. See Paluch v. Dawson, No. 06-1751, 2007 WL 4375937 (M.D. Pa. Dec. 12, 2007).

We also conclude that adopting this course is consistent with settled case law addressing claims of governmental privilege relating to investigative records which acknowledges a governmental privilege but recognizes that courts must balance the confidentiality of governmental files against the rights of a civil rights litigant by considering:

> (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any intra-departmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiffs suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the information sought to the plaintiffs case.

Frankenhauser v. Rizzo, 59 F.R.D. 339, 344 (E.D. Pa. 1973). When striking this balance courts have, in the past, reconciled the competing needs of civil rights litigants for information regarding facts developed in official investigations, with the Government's need to protect its deliberative processes, by directing the release of

non-privileged, factual information in a report to the plaintiff. For example, in Sullivan v. Pa. Dep't of Corrections, 2007 U.S. Dist. LEXIS 19216, *1-2 (M.D. Pa. 2007) (McClure, J.), the Court limited discovery of a report regarding an investigation by the OPR concerning allegations made by two former prison psychologists, holding that, after weighing the parties' interests, only certain non-privileged material contained in the investigation report was discoverable under Rule 26. Id. at *9. Indeed, in the course of this litigation we have previously conducted an *in camera* review of some of these redacted materials and found those redactions to have been necessary and appropriate. Accordingly, we will deny Victor any further relief with respect to these claims.

> **F.** **The Court Will Defer Ruling on Victor's Request for Cell Extraction Information Relating to Defendants Diffin, Goodman, Eberling and Ritchey Pending a Limited In Camera Disclosure of Information to the Court By the Corrections Defendants**.

Finally, in his motion to compel Victor seeks responses to two additional discovery requests. These requests sought information concerning the actions of defendants Diffin, Goodman, Eberling and Ritchey in prior cell extractions between November 20, 2007 and June 28, 2008. According to Victor, he seeks this information to test and challenge the veracity of past statements made by these

12

defendants concerning their involvement in cell extractions. The Department of Corrections has objected to these discovery requests on over breadth grounds, but it seems that evidence which contradicts prior statements by defendants regarding matters which are relevant to this litigation is both substantive evidence as well as impeachment evidence in this case. As such, it is properly discoverable. See Newsome v. Penske Truck Leasing, Corp., 437 F.Supp.2d 431 (D. Md. 2006)(discovery of prior statements which may be both substantive evidence and impeachment evidence permitted). However, no judgment on the relevance and admissibility of this evidence is possible in the abstract, and any assessment of these issues involves a multi-faceted and fact-specific analysis of both the proffered evidence and the party's claims. Recognizing that these prison records may contain arguably discoverable material, we note that in the past courts have reconciled the interests of inmate-plaintiffs and corrections officials by rejecting broadly framed requests for access to prison records, see Paluch v. Dawson, No. 06-1751, 2007 WL 4375937, *4-5 (M.D. Pa. Dec. 12, 2007), while conducting an *in camera* review of those records which may be relevant to more narrowly tailored discovery demands. Paluch v. Dawson, No. 06-1751, 2008 WL 2785638, *3 (M.D. Pa. July 17, 2008).

This is the course we will adopt here. We will direct the defendants to provide to the Court for its *in camera* inspection any responsive records, relating to cell

13

extractions involving defendants Diffin, Goodman, Eberling or Ritchey between January 1, 2008 and June 28, 2008. Armed with this information the Court can determine: (1) whether this information is relevant to the issues raised in this case; (2) whether it is subject to any valid claim of privilege recognized by the Federal Rules; and (3) to what extent, in what format, and under what conditions it may be released to the plaintiff.[4]

## III. Conclusion

Accordingly, it is ORDERED that the plaintiff's motion to compel, (Doc. 239), is DENIED, in part, and, GRANTED in part, as follows: All of Victor's discovery requests are DENIED, with the exception of his request for his own medical records, which is GRANTED provided that he completes the procedures prescribed by Department of Corrections policies.

In addition, on or before June 21, 2010, we direct the defendants to provide to the Court for its *in camera* inspection any responsive records, relating to cell extractions involving defendants Diffin, Goodman, Eberling or Ritchey between January 1, 2008 and June 28, 2008. Armed with this information the Court can determine: (1) whether this information is relevant to the issues raised in this case;

---

[4]Finally, since we have found that the defendants were fully justified in their position with respect to the vast bulk of the discovery claims made by Victor in this motion, we will reject Victor's request for costs or other sanctions.

(2) whether it is subject to any valid claim of privilege recognized by the Federal Rules; and (3) to what extent, in what format, and under what conditions it may be released to the plaintiff.

So ordered this 2d day of June, 2010.

*S/Martin C. Carlson*
**United States Magistrate Judge**