## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WILLIAM VICTOR,** | : | **Civil No. 3:08-CV-01374** |
| | : | |
| **Plaintiff,** | : | **(Judge Nealon)** |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **R.M. LAWLER, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## REPORT AND RECOMMENDATION

### I.    Introduction

This prisoner civil rights case, which comes before the Court on a motion for summary judgment, presents two related questions concerning the nature of the obligations that prison health care providers owe to inmates under the Eighth Amendment to the United States Constitution to refrain from deliberate indifference to inmate medical needs, and the quality of the proof which an inmate must present in order to avoid summary judgment on an Eighth Amendment claim brought by a prisoner against those who are providing him medical care inside the prison.

In this case, we find that the record affirmatively shows that the Defendant Dr. Ronald Long, provided on-going medical care to the inmate-Plaintiff, William Victor. Such on-going care negates a claim of a constitutional deprivation based upon

deliberate indifference to the inmate's medical needs. Moreover, Victor's claim of deliberate indifference is premised entirely upon inadmissible hearsay declarations, which as a matter of law do not create a genuine issue of material fact precluding summary judgment. Since it appears that Dr. Long was not deliberately indifferent to Victor's medical needs, and Victor's claims of deliberate indifference rest solely on assertions that are not competent evidence at trial, we recommend that the Court grant summary judgment in favor of Dr. Long.

## I.     <u>Statement of Facts and of the Case.</u>

This is a civil rights action brought by William Victor, an inmate who was formerly confined in the State Correctional Institution at Huntingdon ("SCI-Huntingdon"). In his complaint, Victor, who is proceeding *pro se*, has named an array of Defendants, including the prison superintendent and other employees of the Pennsylvania Department of Corrections at SCI-Huntingdon. Victor alleges that on June 28, 2008 he was assaulted by Corrections Officers while being moved between cells in the Restricted Housing Unit ("RHU") at SCI-Huntingdon. Attachment to Plaintiff's Amended Complaint at ¶ 6. Victor's jaw was broken in this assault, requiring months of medical treatment, both inside and outside the prison.

Victor's complaints as to Defendant Ronald Long, M.D., arise out of the aftermath of this June 28, 2008 beating. By July, 2008 Victor was housed at SCI

Smithfield, where he was being treated for the injuries which he had sustained two months earlier at SCI Huntingdon. Dr. Long was a physician employed at SCI Smithfield, who was providing care and treatment to Victor for the broken jaw he had suffered as a result of this assault.

Following this June 28 assault, Victor was initially treated at the Altoona Hospital for the injuries he suffered in this incident, injuries which included a fractured jaw. On July 1, 2008, Victor was released from Altoona Hospital, where his jaw was first treated, and was placed in the infirmary of SCI- Smithfield. (Docs. 253, 255, Ex. F, ¶ 5.) As a result of his injuries, Victor's jaw was wired shut when he arrived at SCI-Smithfield, but he was able to speak. (Id., Ex. F, ¶ 6.)

Throughout July and August 2008, Victor was treated by medical staff at SCI Smithfield without incident. Indeed, according to Victor, prior to September 6, 2008, he had no complaints regarding the care or treatment he received from Dr. Long, and he had no reason to believe that Dr. Long was deliberately indifferent to his medical needs.(Id., Ex. D, p. 142, lines 20-25, p.143, lines 1-13.) Moreover, by the end of August 2008, medical records indicated that Victor's recovery was progressing smoothly. Thus, while Victor had been receiving pain medication from prison medical staff, by August 28, 2008, he had indicated to staff that: "I don't need anything for pain...I don't have [any] pain." (Id., Ex. C, p. 202.)

On September 6, 2008 Victor engaged in a self-destructive act which complicated his medical treatment and recovery. According to Victor, on September 6, 2008, correctional staff came to Victor's cell and gave him some personal grooming items, including nail clippers, razors and a mirror. (Id., Ex. D, p. 148, lines 11-25, p. 149, line 1.) After receiving these items Victor reportedly became ill and felt that he was going to vomit. According to Victor, he believed that the emergency call button in his cell did not operate and when he was unable to gain the attention of corrections staff, he decided on his own to use the nail clippers to cut the wires holding his jaw in place and vomited. (Id., Ex. D, p. 143, lines 14-25, p. 144, lines 1-25, p. 145, lines 1-25, p. 146, lines 1-13.) Prison medical records reveal that Victor reported to medical personnel a different motive for this behavior on September 6, claiming that he decided to cut the jaw wires that were assisting his recovery because he was dissatisfied with his prison diet. (Id., Ex.C, p. 203.)

Regardless of what motivated Victor to engage in this conduct, prison medical staff promptly responded to Victor's actions, providing him further care and treatment despite his efforts to interfere with that treatment. This additional treatment began within days of this incident, on September 8, 2008.

On September 8, 2008, Dr. Long saw Victor and noted that Victor had severed the wires that were intended to stabilize his jaw as it healed. Medical records reveal

that Victor was in no acute distress at this time and was, therefore, discharged from the prison infirmary. (Id., Ex. C, p. 203.) Moreover, during this September 8, 2008, examination Victor made no complaint of jaw pain. (Id., Ex.C, p. 203.) Following this examination, on September 8, 2008, Dr. Long referred Victor to the dental department at SCI-Smithfield, for further follow up treatment where Victor was seen by Dr. Frank Barnish. (Id., Ex. C, p. 24.)

In September of 2008 Dr. Barnish was the staff dentist at SCI-Smithfield. (Id., Ex. G, ¶ 2..) At Dr. Long's request, Dr. Barnish saw and treated Victor on September 8, 2008.(Id., Ex.G, ¶¶ 4 and 5.) At the time of this treatment, Victor acknowledged that his medical complications were a result of his own conduct, telling Dr. Barnish that he cut these wires off himself. (Id., Ex.G, ¶ 6.)

During this initial dental consult and examination, Victor complained of sharp spots on the right side of his mouth in the canine area, where the cut jaw wires were in contact with his mouth.(Id., Ex. G, ¶ 7.) Dr. Barnish immediately addressed Victor's presenting concern, covering all of the sharp spots with a special wax so the oral surgeon could either remove all of the wires or reattach them.(Id., Ex. G, ¶ 8.) At no time on September 8, 2008, did Victor complain to Dr. Barnish about being in pain, (Id., Ex. G, ¶ 9.) Had Victor indicated he was in pain, Dr. Barnish would have noted this fact in the medical records and ordered pain medication if he felt it was

needed. (Id., Ex. G, ¶ 10.) Moreover, Drs. Long and Barnish both agree that at the time of these initial examinations on September 8, 2008, Victor never asked for pain medication, and Dr. Long never instructed Dr. Barnish to withhold pain medication from Victor. (Id., Ex. G, ¶ 14.)

Following this initial treatment, Victor did not sign up again for sick call from September 8, 2008 to September 22, 2008. (Id., Exhibit F, ¶ 20.) Nor did Victor request to see a nurse or physician's assistant for any reason from September 8, 2008 to September 22, 2008. (Id., Ex. F, ¶ 22.) On September 22, 2008, Victor was seen at the prison by physician's assistant Roy McMullen after he reported experiencing discomfort in his jaw. The physician assistant noted that Victor was scheduled by Dr. Long to see an oral surgeon later that week and observed that Victor did not appear to be in any acute distress although he had decreased range of motion in his mandible. Accordingly, the physician's assistant instructed Victor to follow up with oral surgeon as scheduled. (Id., Ex. C, p. 40a.)

Three days later, on September 25, 2008, at the request of Dr. Long, the oral surgeon, Dr. Keyser, examined Victor. In the course of this examination the surgeon noted that Victor's fracture was healing well and his occlusion was stable. Accordingly, the surgeon scheduled Victor for outpatient surgery to remove the arch bands in his mouth.(Id., Ex. C, p. 87.) While the medical records indicate that the oral

surgeon did not note that Victor was in any acute pain or discomfort, the oral surgeon recommended that if Victor experienced pain Motrin was permissible. (Id., Ex. C, p. 87.)

Medical staff promptly followed up on this recommendation. Thus, on September 29, 2008, Victor was seen by Physician's Assistant McMullen, requesting pain treatment. While Victor did not appear to be in any acute distress, (id., Ex. C, p. 40a), McMullen ordered a pain reliever, Motrin 400mg, for Victor.(Id., Ex. C, p.16a.) Dr. Long later approved this order, (id., Ex. F, ¶ 25) and prescribed Motrin for Victor. (Id., Ex. F, ¶ 26.)

Medical staff then completed Victor's course of treatment for this jaw injury in October of 2008. As part of this treatment, on October 17, 2008, Victor was seen for a pre-operative physical.(Id., Ex. C, p. 40a..) Two days later, on October 19, 2008, Victor returned to the infirmary in preparation for a procedure to remove his jaw wires. (Id., Ex. C, p. 40a.) The following day, October 20, 2008, Victor left with security for the hospital where the surgery to remove these wires was performed. (Id.) He then returned from hospital and was placed on 23-hour observation without any restrictions.(Id., Ex.C, p. 41a.). On October 21, 2008, Victor voiced no further complaints and was discharged from the infirmary. (Id., Ex. C, pages 15a and 38a.)

For his part, Victor does not seriously dispute this treatment chronology. Nor does he dispute that he instigated these events when he decided to cut the wires holding his jaw in place while it healed. In fact, Victor has acknowledged that, prior to September 6, 2008, he received on-going care from Dr. Long and has conceded that Dr. Long was not deliberately indifferent to his medical needs prior to September 6, 2008. (Id.,Ex. D, p. 142, lines 20-25, p.143, lines 1-13.) Victor also confirms that he did not specifically ask Dr. Long for pain medication. However, Victor contends that between September 8 and 29, 2008, he asked nurses and other staff on occasion for pain medication, but claims on the basis of hearsay assertions by unidentified declarants that he did not receive such medication, allegedly on Dr. Long's instructions. (Id., Ex. D, p. 149, lines 24-25, p. 150, lines 1-25, p. 151, lines 1-25, 152, lines 1-23.) Beyond Victor's claims regarding what he understood that unnamed correctional staff allegedly said concerning instructions they claimed to have received from Dr. Long, Victor presents no evidence to support his assertion that pain medications were deliberately withheld from him by Long.

Despite this paucity of proof, Victor has filed this action against Dr. Long, asserting that the Defendant violated his Eighth Amendment right to be free from cruel and unusual punishment by displaying deliberate indifference to his serious medical needs. Dr. Long has moved for summary judgment on this claim. That

motion has now been fully briefed by the parties, (Docs. 252, 253, 255, 263, 280 and 282) and is now ripe for resolution.

For the reasons set forth below, it is recommended that this motion for summary judgment be granted.

## II. <u>Discussion</u>

### A. <u>Rule 56– The Legal Standard.</u>

Dr. Long has moved for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, which provides that "[t]he judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Through summary adjudication a court is empowered to dispose of those claims that do not present a "genuine issue as to any material fact," Fed. R. Civ. P. 56, and for which a trial would be "an empty and unnecessary formality." <u>Univac Dental Co. v. Dentsply Int'l, Inc.</u>, No. 07-0493, 2010 U.S. Dist. LEXIS 31615, at *4 (M.D. Pa. Mar. 31, 2010).

The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." <u>Anderson v. Liberty Lobby, Inc.</u>,

477 U.S. 242, 248 (1986).  A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party.  Id. at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact.  Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004).  Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate.  Celotex, 477 U.S. at 322.  Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249.  There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts.  Id. at 252; see also, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In making this determination, the Court must "consider

all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

Moreover, a party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual disputes exist. Thus, "only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment." Countryside Oil Co., Inc. v. Travelers Ins. Co., 928 F.Supp. 474, 482 (D.N.J.1995). This rule applies with particular force to parties who attempt to rely upon hearsay statements to establish material issues of fact which would preclude summary judgment. With respect to such claims, it is well-settled that: "In this circuit, hearsay statements can be considered on a motion for summary judgment [only] if they are capable of admission at trial." Shelton v. University of Medicine & Dentistry of N.J., 223 F.3d 220, 223, n. 2 (3d Cir. 2000), citing, Stelwagon Mfg. V. Tarmac Roofing, Suys., Inc., 63 F.3d 1267, 1275, n. 17 (3d Cir. 1995). In this regard it has been aptly observed that:

> It is clear that when considering a motion for summary judgement, a court may only consider evidence which is admissible at trial, and that a party can not rely on hearsay evidence when opposing a motion for summary judgment. See Buttice v. G.D. Searle & Co., 938 F.Supp. 561 (E.D.Mo.1996). Additionally, a party must respond to a hearsay objection by demonstrating that the material would be admissible at trial under an exception to hearsay rule, or that the material is not hearsay. See Burgess v. Allstate Ins. Co., 334 F.Supp.2d 1351 (N.D.Ga.2003). The mere possibility that a hearsay statement will be admissible at trial,

does not permit its consideration at the summary judgment stage. <u>Henry</u> <u>v. Colonial Baking Co. of Dothan</u>, 952 F.Supp. 744 (M.D.Ala.1996).

<u>Bouriez v. Carnegie Mellon University</u>, No. 02-2104, 2005 WL 2106582,* 9 (W.D.Pa. Aug. 26, 2005) Thus, a party may not rely upon inadmissible hearsay assertions to avoid summary judgment. Therefore, where a party simply presents inadmissible hearsay declarations in an attempt to establish a disputed material issue of fact, courts have typically rebuffed these efforts and held instead that summary judgment is appropriate. <u>See, e.g.</u>, <u>Synthes v. Globus Medical, Inc.</u>, No. 04-1235, 2007 WL 2043184 (E.D.Pa. July 12, 2007); <u>Bouriez v. Carnegie Mellon University</u>, No. 02-2104, 2005 WL 2106582,* 9 (W.D.Pa. Aug. 26, 2005); <u>Carpet Group International v. Oriental Rug Importers Association, Inc.</u>, 256 F.Supp.2d 249 (D.N.J. 2003)

### B. <u>Legal Standards Governing Eighth Amendment "Deliberate Indifference" Claims in a Prison Medical Context.</u>

In this case, the gravamen of Victor's complaint as to Defendant Long is that this prison health care provider violated his rights under the Eighth Amendment to the United States Constitution by displaying "deliberate indifference" to his medical needs. Victor faces an exacting burden in advancing this Eighth Amendment claim

against prison officials in their individual capacities. To sustain such a claim, Victor must:

> [M]eet two requirements: (1) "the deprivation alleged must be, objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quotation marks and citations omitted). In prison conditions cases, "that state of mind is one of 'deliberate indifference' to inmate health or safety." Id. "Deliberate indifference" is a subjective standard under Farmer-the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety.

Beers-Capitol v. Whetzel, 256 F.3d 120, 125 (3d Cir. 2001).

These principles apply with particular force to Eighth Amendment claims premised upon inadequate medical care. In the medical context, a constitutional violation under the Eighth Amendment occurs only when state officials are deliberately indifferent to an inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 105 (1976). To establish a violation of his constitutional right to adequate medical care in a prison setting, Victor is required to point to evidence that demonstrates both (1) a serious medical need, and (2) acts or omissions by prison officials that indicate deliberate indifference to that need. Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 104. Such indifference may be

evidenced by an intentional refusal to provide care, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, denial of reasonable requests for treatment that results in suffering or risk of injury, <u>Durmer v. O'Carroll</u>, 991 F.2d 64, 68 (3d Cir. 1993), or by "persistent conduct in the face of resultant pain and risk of permanent injury," <u>White v. Napoleon</u>, 897 F.2d 103, 109 (3d Cir. 1990).

However, it is also clear that the mere misdiagnosis of a condition or medical need, or negligent treatment provided for a condition, is not actionable as an Eighth Amendment claim because medical malpractice is not a constitutional violation. <u>Estelle</u>, 429 U.S. at 106. "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." <u>Durmer</u>, 991 F.2d at 67 (citations omitted). Furthermore, in a prison medical context, deliberate indifference is generally not found when some significant level of medical care has been offered to the inmate. <u>Clark v. Doe</u>, 2000 U.S. Dist. LEXIS 14999, 2000 WL 1522855, at *2 (E.D.Pa. Oct. 13, 2000)("courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care"). Thus, such complaints fail as constitutional claims under § 1983 since "the exercise by a doctor of his professional judgment is never deliberate indifference. <u>See e.g.</u> <u>Brown v. Borough of Chambersburg</u>, 903 F.2d 274, 278 (3d Cir.1990) ('[A]s long as a physician exercises

14

professional judgment his behavior will not violate a prisoner's constitutional rights.')". <u>Gindraw v. Dendler</u>, 967 F.Supp. 833, 836 (E.D. Pa. 1997). Applying this exacting standard, courts have frequently rejected Eighth Amendment claims that are based upon the level of professional care that an inmate received; <u>see, e.g.,</u> <u>Ham v. Greer</u>, 269 F. App'x 149 (3d Cir. 2008); <u>James v. Dep't of Corrections</u>, 230 F. App'x 195 (3d. Cir. 2007); <u>Gillespie v. Hogan</u>, 182 F. App'x 103 (3d Cir. 2006); <u>Bronson v. White</u>, No. 05-2150, 2007 WL 3033865 (M.D. Pa. Oct. 15, 2007); <u>Gindraw v. Dendler</u>, 967 F.Supp. 833 (E.D. Pa. 1997), particularly where it can be shown that significant medical services were provided to the inmate but the prisoner is dissatisfied with the outcome of these services. Instead, courts have defined the precise burden which an inmate must sustain in order to advance an Eighth Amendment claim against a healthcare professional premised on allegedly inadequate care, stating that:

> The district court [may] properly dis[miss an] Eighth Amendment claim, as it concerned [a care giver], because [the] allegations merely amounted to a disagreement over the proper course of his treatment and thus failed to allege a reckless disregard with respect to his . . . care. The standard for cruel and unusual punishment under the Eighth Amendment, established by the Supreme Court in <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976), and its progeny, has two prongs: 1) deliberate indifference by prison officials and 2) serious medical needs. "It is well-settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.' " "Nor does mere disagreement as to the proper medical treatment support

a claim of an eighth amendment violation." . . . . [The inmate] alleged no undue delay in receiving treatment and, as the district court noted, the evidence he presented established that he received timely care . . . . Although [an inmate plaintiff] may have preferred a different course of treatment, [t]his preference alone cannot establish deliberate indifference as such second-guessing is not the province of the courts.

James, 230 F.App'x. at 197-198 (citations omitted).

In short, in the context of the Eighth Amendment, any attempt to second-guess the propriety or adequacy of a particular course of treatment is disavowed by courts since such determinations remain a question of sound professional medical judgment. Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (quoting Bowring v. Godwin, 551 F.2d 44, 48 (4th Cir. 1977)).

Furthermore, it is well-settled that an inmate's dissatisfaction with a course of medical treatment, standing alone, does not give rise to a viable Eighth Amendment claim. See Taylor v. Norris, 36 F. App'x 228, 229 (8th Cir.2002) (deliberate indifference claim failed when it boiled down to a disagreement over recommended treatment for hernias and decision not to schedule a doctor's appointment); Abdul-Wadood v. Nathan, 91 F.3d 1023, 1024-35 (7th Cir.1996) (inmate's disagreement with selection of medicine and therapy for sickle cell anemia falls well short of demonstrating deliberate indifference); Sherrer v. Stephen, 50 F.3d 496, 497 (8th Cir.1994) (inmate's "desire for a replacement joint instead of fusion surgery is merely

a disagreement with the course of medical treatment and does not state a constitutional claim"); <u>Kayser v. Caspari</u>, 16 F.3d 280, 281 (8th Cir.1994) (prison provided escalating level of treatment for inmates's ailments over time, and inmate's disagreement with course of medical treatment was insufficient basis for Eighth Amendment violation); <u>Czajka v. Caspari</u>, 995 F.2d 870, 871 (8th Cir.1993) (inmate's mere disagreement with doctor's informed decision to delay surgery does not establish Eighth Amendment claim); <u>Smith v. Marcantonio</u>, 910 F.2d 500, 502 (8th Cir.1990) (inmate failed to prove deliberate indifference where his complaints represented nothing more than mere disagreement with course of his medical treatment); <u>Lair v. Oglesby</u>, 859 F.2d 605, 606 (8th Cir.1988) (disagreement about whether doctor should have prescribed medication does not result in constitutional violation); <u>Martin v. Sargent</u>, 780 F.2d 1334, 1339 (8th Cir.1985) (Inmate failed to state facts indicating doctor deliberately disregarded his medical problem; inmate's disagreement as to proper medical treatment does not give rise to Eighth Amendment violation).

Thus, as a legal matter, disputes between inmates and medical professionals concerning which of several available treatment options to use in treating a specific medical problem simply do not rise to the level of a constitutional infraction involving deliberate indifference to a serious medical need. Indeed, courts have repeatedly held that when an inmate's Eighth Amendment claim entails nothing more

than a disagreement concerning which type of treatment to prescribe for a particular medical problem, prison officials are entitled to a judgment in their favor as a matter of law. See e.g., Gause v. Diguglielmo, 339 F.App'x 132 (3d Cir. 2009)(dispute over choice of medication does not rise to the level of an Eighth Amendment violation); Innis v. Wilson, 334 F.App'x 454 (3d Cir. 2009)(same);Rozzelle v. Rossi, 307 F.App'x 640 (3d Cir. 2008)(same); Whooten v. Bussanich, 248 F.App'x 324 (3d Cir. 2007)(same); Ascenzi v. Diaz, 247 F.App'x 390 (3d Cir. 2007)(same). In short, where a dispute in essence entails no more than a disagreement between an inmate and doctors over alternate treatment plans, the inmate's complaint will fail as constitutional claims under § 1983 since "the exercise by a doctor of his professional judgment is never deliberate indifference." Gindraw v. Dendler, 967 F.Supp. 833, 836 (E.D. Pa. 1997)(citations omitted).

> **C.** **Victor Has Failed to Establish An Eighth Amendment "Deliberate Indifference" Claim Against Dr. Long in a Prison Medical Context.**

In this case, judged against these exacting standards, it is evident that Victor has not met the legal and factual threshold necessary to sustain an Eighth Amendment claim of deliberate indifference to his serious medical needs with respect to Dr. Long.

Therefore, it is recommended that the Court find that Defendant Long is entitled to summary judgment on this Eighth Amendment claim.

At the outset, it is entirely undisputed that the plaintiff received extensive, on-going medical treatment for the injuries he suffered in June of 2008 from Dr. Long and the medical staff at SCI Smithfield. During 2008, Victor was examined and treated by doctors, a dentist, an oral surgeon, and physician assistants. He received on-going care, including care and treatment following his self-inflicted medical complications stemming from Victor's decision to cut the wires that secured his jaw as it healed. Indeed, Victor does not dispute any of this treatment. Nor does he dispute that he instigated these events when he decided to cut the wires holding his jaw in place while it healed. In fact, Victor has acknowledged that, prior to September 6, 2008, he received on-going care from Dr. Long and has conceded that Dr. Long was not deliberately indifferent to his medical needs. (<u>Id</u>.,Ex. D, p. 142, lines 20-25, p.143, lines 1-13.) Victor has also confirmed that he did not specifically ask Dr. Long for pain medication. All of this on-going care is undisputed in the factual record, and is fatal to Victor's claim that this health care professional was deliberately indifferent to his medical needs since "the exercise by a doctor of his professional judgment is never deliberate indifference. <u>See e.g.</u> <u>Brown v. Borough of Chambersburg</u>, 903 F.2d 274, 278 (3d Cir.1990) ('[A]s long as a physician exercises professional judgment his

19

behavior will not violate a prisoner's constitutional rights.')". <u>Gindraw v. Dendler</u>, 967 F.Supp. 833, 836 (E.D. Pa. 1997).

Because the longstanding course of this treatment would thoroughly rebut any claim of deliberate indifference to his medical needs, Victor is reduced in his pleadings to advancing a narrow claim that Dr. Long denied him access to pain relievers for a three week period, from September 8 through September 29, 2008. Such an allegation, if supported by competent evidence, could create an issue of fact as to this Eighth Amendment claim since deliberate indifference may be evidenced by denial of reasonable requests for treatment that results in suffering or risk of injury, <u>Durmer v. O'Carroll</u>, 991 F.2d 64, 68 (3d Cir. 1993), or by "persistent conduct in the face of resultant pain and risk of permanent injury," <u>White v. Napoleon</u>, 897 F.2d 103, 109 (3d Cir. 1990).

In this case, however, Victor does not present competent evidence to support his factual assertion that Dr. Long ordered medical staff to deny him pain killing medication. Instead, in order to sustain this constitutional claim Victor simply relies upon what he alleges are statements made by unidentified prison personnel, who purportedly told Victor that they had been instructed by Dr. Long to refrain from providing him with access to pain relievers. (Doc. 255, Ex. D. pp.151, 152, and 159.)

This hearsay showing is plainly inadequate to create a genuine issue of material fact defeating a summary judgment motion. Indeed "[i]t is clear that when considering a motion for summary judgement, a court may only consider evidence which is admissible at trial, and that a party can not rely on hearsay evidence when opposing a motion for summary judgment. See Buttice v. G.D. Searle & Co., 938 F.Supp. 561 (E.D.Mo.1996)". Bouriez v. Carnegie Mellon University, No. 02-2104, 2005 WL 2106582,* 9 (W.D.Pa. Aug. 26, 2005). In this case, Victor's claim against Dr. Long is premised exclusively upon hearsay; that is, statements made by persons other than the declarant which are offered by Victor to prove the truth of the matter asserted. F.R.Evid. 801(c). Indeed, Victor's claim as to Dr. Long is premised upon one of the most unreliable forms of hearsay declarations, hearsay attributed to unidentified declarants who, in turn, are alleged to have recited hearsay statements they heard from some other third party. Thus, Victor attempts to save this constitutional claim by reciting anonymous hearsay-within-hearsay, and insisting that these multiple levels of inadmissible hearsay create a factual issue which must be tried.

The multiple levels of hearsay evidence presented by Victor are generally inadmissible, see F.R.Evid. 802, and we can find no exception to the hearsay rules which would allow the admission of these otherwise unreliable and inadmissible statements at trial. Since "[i]n this circuit, hearsay statements can be considered on

a motion for summary judgment [only] if they are capable of admission at trial." Shelton v. University of Medicine & Dentistry of N.J., 223 F.3d 220, 223, n. 2 (3d Cir. 2000), citing, Stelwagon Mfg. V. Tarmac Roofing, Suys., Inc., 63 F.3d 1267, 1275, n. 17 (3d Cir. 1995), Victor's failure to present anything other than hearsay in opposition to this motion cannot defeat that motion, and summary judgment is appropriate here. See, e.g., Synthes v. Globus Medical, Inc., No. 04-1235, 2007 WL 2043184 (E.D.Pa. July 12, 2007)(granting summary judgment opposed only by hearsay); Bouriez v. Carnegie Mellon University, No. 02-2104, 2005 WL 2106582,* 9 (W.D.Pa. Aug. 26, 2005)(granting summary judgment opposed only by hearsay); Carpet Group International v. Oriental Rug Importers Association, Inc., 256 F.Supp.2d 249 (D.N.J. 2003)(granting summary judgment opposed only by hearsay).

In short, the evidence shows that Victor received on-going treatment from the Defendant and the medical staff at SCI-Smithfield. This treatment continued even after Victor's self-inflicted medical complications stemming from his decision to cut the wires that secured his jaw as it healed. Moreover, Victor's Eighth Amendment claim is premised wholly on inadmissible, hearsay-within-hearsay assertions, which are insufficient as a matter of law to defeat a summary judgment motion.

## IV.    Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that Defendant Long's motion for summary judgment (Doc. 252) be GRANTED. In light of this ruling, IT IS FURTHER RECOMMENDED that Victor's motion to strike the reply brief filed by Defendant Long (Doc. 282) be dismissed as moot.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified  proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 15th day of July, 2010.

*S/Martin C. Carlson*
Martin C. Carlson
 United States Magistrate Judge