IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WILLIAM VICTOR,** | : | NO. 3:08-CV-01374 |
| | : | |
| **Plaintiff,** | : | (Judge Nealon) |
| | : | |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| **R.M. LAWLER, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## MEMORANDUM OPINION

### I.   Statement of Facts and of the Case.

This is a civil rights action brought by William Victor, an inmate who was formerly confined in the State Correctional Institution at Huntingdon ("SCI-Huntingdon"). In his complaint, Victor, who is proceeding *pro se,* has named an array of Defendants, including the prison superintendent and other employees of the Pennsylvania Department of Corrections at SCI-Huntingdon. Victor alleges that on June 28, 2008, he was assaulted by Corrections Officers while being moved between cells in the Restricted Housing Unit ("RHU") at SCI-Huntingdon. Attachment to Plaintiff's Amended Complaint at ¶ 6. Victor's jaw was allegedly broken in this assault, requiring medical treatment outside the prison.

As to some of the Defendants named in this action, it has been alleged–without dispute–that the Office of Attorney General for the Commonwealth of Pennsylvania

has conducted a criminal investigation to determine whether criminal charges are warranted as to any of these correctional officials. Furthermore, it is apparent that the Commonwealth itself has found that there are substantial, unresolved factual questions relating to the conduct of some correctional officials in connection with this cell extraction since some staff were disciplined for their roles in this matter, and the State has withdrawn from representing certain Defendants in this civil lawsuit, citing its finding of bad faith deliberate misconduct on their part. (Doc. 113 and 114.)

Acknowledging the fact of this criminal investigation, an investigation whose outcome is presently unknown, Victor has filed a motion, styled "Motion for Relief" (Doc. 317), which requests production of investigative records from this criminal investigation for use by Victor in preparing and litigating his civil case arising out of this alleged assault. (Id.) The Defendants have filed responses, opposing Victor's request for access to these investigative materials, citing the principle of grand jury secrecy, which typically calls for a showing of a particularized need before grand jury information may be disclosed to litigants in some related civil lawsuit. (Docs. 327, 332, 334.) Arguing that Victor has not made such a showing, the Defendants urge this Court to summarily deny Victor's motion. Notably absent from these responses, however, is any indication from the Office of Attorney General, Commonwealth of Pennsylvania regarding: (1) whether an investigation remains on-going in this case;

(2) whether investigative materials exist that fall outside the purview of the grand jury which might be released to Victor; and (3) whether the release of these materials would in any way implicate the interests which grand jury secrecy is designed to promote.[1] In reply, Victor has argued that his request is narrowly tailored and only seeks reports of interview or statements of Defendants made outside the grand jury during this criminal probe that may be relevant and probative on the issue of whether any correctional staff defendants assaulted Victor. (Doc. 340.)

Having considered these pleadings, we conclude that Victor's motion should not be summarily denied. Instead, we will direct the Office of Attorney General, Commonwealth of Pennsylvania to provide an *in camera* declaration identifying

---

[1] In addition, to being notable in what it does not allege, the response of one of the defendants, Williams Diffin, is notable in what it does allege. For his part, Diffin denies any wrongdoing , and asserts that the June 28 encounter with Victor was videotaped as proof that nothing improper occurred. (Doc. 334.) What Diffin neglects to mention, however, is that  there is direct evidence indicating that Diffin's co-defendant, Defendant Goodman, altered and edited this videotape. On June 28 Goodman was assigned as the videographer for the cell extraction team. As such, he was responsible for ensuring that a complete and accurate videotaped record existed of all of the events surrounding this cell extraction.  However, there is evidence showing that Goodman selectively edited the videotaping of this particular cell extraction, failing to videotape particularly incriminating portions of this incident, a failure which the Defendants later claimed was an inadvertent oversight. (Doc. 259.) While Goodman disputes this evidence, it must be noted in light of this evidence that Diffin's reliance on what may be an altered videotape to assert his lack of culpability does not advance his claim that Victor should be denied discovery relating to the alleged alteration of that tape and other misconduct.

information essential to an informed ruling on this objection, which is premised upon considerations of grand jury secrecy.

## II. Discussion

The Defendants' objection to disclosure of criminal investigative records to the Plaintiff in this case, William Victor, is premised upon a basic tenet of grand jury practice, the fundamental principle that grand jury proceedings are, and should be, cloaked in secrecy. This basic attribute of grand jury proceedings, and the important societal goals advanced by such secrecy, were aptly summarized by the United States Supreme Court in the following terms:

> We consistently have recognized that the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings. In particular, we have noted several distinct interests served by safeguarding the confidentiality of grand jury proceedings. First, if preindictment proceedings were made public, many prospective witnesses would be hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of that testimony. Moreover, witnesses who appeared before the grand jury would be less likely to testify fully and frankly, as they would be open to retribution as well as to inducements. There also would be the risk that those about to be indicted would flee, or would try to influence individual grand jurors to vote against indictment. Finally, by preserving the secrecy of the proceedings, we assure that persons who are accused but exonerated by the grand jury will not be held up to public ridicule.

Douglas Oil Co. of California v. Petrol Stops Northwest, 441 U.S. 211, 218-219, (1979).

Recognizing the important societal goals promoted by grand jury secrecy, the Court has placed a precise and exacting burden on parties, like Victor, who may seek to pierce this secrecy and gain access to investigative records concerning matters under inquiry by a grand jury. As the Supreme Court has stated: "disclosure is appropriate only in those cases where the need for it outweighs the public interest in secrecy, and that the burden of demonstrating this balance rests upon the private party seeking disclosure. It is equally clear that as the considerations justifying secrecy become less relevant, a party asserting a need for grand jury transcripts will have a lesser burden in showing justification." Id. at 223.

While these guiding principles set exacting standards for disclosure of materials relating to a grand jury investigation, it is also plain that they do not compel the denial of such requests simply because the requests touch upon matters under scrutiny by a grand jury. Quite the contrary, as the Supreme Court has held, all such requests must be measured against the principles that govern grand jury secrecy, and "as the considerations justifying secrecy become less relevant, a party asserting a need for grand jury transcripts will have a lesser burden in showing justification." Id. at 223.

In this case, we conclude that the record before us does not permit a fully informed assessment of the Defendants' objections to Victor's request for disclosure. We note, however, that Victor's request, as described in his reply brief, (Doc. 340) is

narrowly tailored and appears to encompass only reports of statements by the named Defendants obtained by investigators outside the grand jury, which may relate directly to the matters in this litigation, the circumstances surrounding the June 28, 2008, cell extraction of Victor, the way in which Victor's injuries occurred, and the extent to which the scene of the cell extraction was staged, or evidence documenting that cell extraction was altered. Defined in this narrow fashion, Victor's request undeniably seeks matters relevant to this litigation. Furthermore, it is not clear how the release of these statements, which are admissions of the Defendants, would implicate any considerations of grand jury secrecy since the Defendants are doubtless aware of the substance of their own prior interviews.

Nonetheless in order to determine whether the disclosure of these matters should be denied, despite their relevance, on grand jury grounds, IT IS ORDERED as follows:

1. The corrections defendants are directed to forward a copy of this order to the Office of Attorney General, Commonwealth of Pennsylvania.

2. On or before **April 26, 2011**, the Office of Attorney General will file with the Court any objections which it has to the issuance of a subpoena *duces tecum* for the limited production of documents restricted solely to

reports of statements by the named Defendants in this case, obtained by investigators outside the grand jury, which may relate to the matters in this litigation, the circumstances surrounding the June 28, 2008, cell extraction of Victor, the way in which Victor's injuries occurred, and the extent to which the scene of the cell extraction was staged, or evidence documenting that cell extraction was altered.

3. If the Office of Attorney General objects to the release of this information, it shall provide to the Court for *in camera* inspection:

   A. Copies of any responsive reports.

   B. A declaration describing how the release of the reports would implicate grand jury secrecy concerns, which response should specifically address: (I) whether the investigation of this matter is still on-going; (ii) how release of these statements could implicate the grand jury secrecy concern that prospective witnesses would be hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of that testimony; (iii) how release of these statements could implicate the grand jury

secrecy concern that witnesses who appeared before the grand jury would be less likely to testify fully and frankly, as they would be open to retribution as well as to inducements; (iv) how release of these statements could implicate the grand jury secrecy concern that there also would be the risk that those about to be indicted would flee, or would try to influence individual grand jurors; and (v) how release of these statements could implicate the grand jury secrecy concern that persons who are accused but exonerated by the grand jury will not be held up to public ridicule.

So ordered this 5th day of April, 2011.

                */s/ Martin C. Carlson*
                Martin C. Carlson
                United States Magistrate Judge