**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **WILLIAM VICTOR,** | : | **Civil No. 3:08-CV-01374** |
| | : | |
| **Plaintiff,** | : | **(Judge Nealon)** |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **R.M. LAWLER, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

**MEMORANDUM OPINION AND ORDER**

**I.     Statement of Facts and of the Case.**

This is a civil rights action brought by William Victor, an inmate who was formerly confined in the State Correctional Institution at Huntingdon ("SCI-Huntingdon").  In his complaint, Victor, who is proceeding *pro se*, has named an array of prison staff as defendants, and has alleged that on June 28, 2008, he was assaulted by Corrections Officers while being moved between cells in the Restricted Housing Unit ("RHU") at SCI-Huntingdon.  Attachment to Plaintiff's Amended Complaint at ¶ 6.  Victor's jaw was allegedly broken in this assault, requiring medical treatment outside the prison.

One of the defendants named in this complaint is William Diffin.  On June 28, 2008, Diffin was a lieutenant at SCI Huntingdon, and was in command of the cell extraction team that is alleged to have broken Victor's jaw while removing him from

his cell in the Restricted Housing Unit. As to Defendant Diffin, there are clear, and clearly unresolved, factual questions concerning Diffin's role in this cell extraction and how that role may have contributed to the broken jaw which was undeniably suffered by Victor on or about June 28, 2008. There are also other, presently unresolved and material factual questions concerning the activities of defendant Diffin in connection with this cell extraction. Evidence of record in this case, including summary judgment submissions by other defendants, indicates that on the day of Victor's cell extraction Diffin may have attempted to stage the scene of the cell extraction, and create a false account of events leading up to the cell extraction. In particular, it is alleged that Diffin may have caused a noose to be planted in Victor's cell, in an apparent effort to falsely suggest both that there was an exigency to the cell extraction and that Victor may have harmed himself on June 28, 2008.

Furthermore, it is apparent that the Commonwealth itself has found that there are substantial, unresolved factual questions relating to Diffin's conduct in connection with this cell extraction since Diffin was disciplined for his role in this matter, and the State has withdrawn from representing Diffin in this civil lawsuit, citing its finding of bad faith deliberate misconduct on his part. (Doc. 113 and 114)

The current motion before the Court focuses on the conduct of defendant Diffin. Victor has now filed a motion, styled motion for relief, (Doc. 378), which is

in essence a motion to compel discovery. This motion, in its only contested aspect,[1] seeks disclosure of a document whose existence has already been disclosed to Victor, a polygraph examination of defendant Diffin, performed by the Department of Corrections in the course of administrative proceedings relating to this defendant. This report allegedly indicated deception on Diffin's part when responding to questions regarding this June 2008 episode. With respect to this specific polygraph examination report, curiously, defendant Diffin has filed no response opposing the release of this report. The other corrections defendants have, however, opposed the release of this polygraph report, arguing that it is both irrelevant and privileged. (Doc. 379) This matter is fully briefed and ripe for resolution.

In the unique facts of this case, we find that the report may fall within the broad ambit of relevant evidence, since it may lead to the discovery of admissible evidence. Therefore, we will grant this motion.

**II.   Discussion**

Several basic guiding principles inform our resolution of the instant discovery dispute. At the outset, Rule 37 of the Federal Rules of Civil Procedure governs motions to compel discovery, and provides that:

---

[1] The motion sought other reports as well, which the corrections defendants represent they do not oppose, (Doc. 379, p.2), therefore, the motion is granted without opposition as to those other matters.

> (a) Motion for an Order Compelling Disclosure or Discovery
>
> (1) In General. On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. . . .

Fed. R. Civ. P. 37(a).

The scope of what type of discovery may be compelled under Rule 37 is defined, in turn, by Rule 26(b)(1) of the Federal Rules of Civil Procedure, which provides as follows:

> (1) Scope in General. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)( C ).

Fed. R. Civ. P. 26(b)(1)

Rulings regarding the proper scope of discovery, and the extent to which discovery may be compelled, are matters consigned to the court's discretion and judgment. Thus, it has long been held that decisions regarding Rule 37 motions are "committed to the sound discretion of the district court." DiGregorio v. First Rediscount Corp., 506 F.2d 781, 788 (3d Cir. 1974). Similarly, issues relating to the

scope of discovery permitted under Rule 26 also rest in the sound discretion of the court. Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 90 (3d Cir. 1987). Thus, a court's decisions regarding the conduct of discovery, and whether to compel disclosure of certain information, will be disturbed only upon a showing of an abuse of discretion. Marroquin-Manriquez v. I.N.S., 699 F.2d 129, 134 (3d Cir. 1983). This far-reaching discretion extends to rulings by United States Magistrate Judges on discovery matters. In this regard:

> District courts provide magistrate judges with particularly broad discretion in resolving discovery disputes. See Farmers & Merchs. Nat'l Bank v. San Clemente Fin. Group Sec., Inc., 174 F.R.D. 572, 585 (D.N.J.1997). When a magistrate judge's decision involves a discretionary [discovery] matter . . . , "courts in this district have determined that the clearly erroneous standard implicitly becomes an abuse of discretion standard." Saldi v. Paul Revere Life Ins. Co., 224 F.R.D. 169, 174 (E.D.Pa.2004) (citing Scott Paper Co. v. United States, 943 F.Supp. 501, 502 (E.D.Pa.1996)). Under that standard, a magistrate judge's discovery ruling "is entitled to great deference and is reversible only for abuse of discretion." Kresefky v. Panasonic Commc'ns and Sys. Co., 169 F.R.D. 54, 64 (D.N.J.1996); see also Hasbrouck v. BankAmerica Hous. Servs., 190 F.R.D. 42, 44-45 (N.D.N.Y.1999) (holding that discovery rulings are reviewed under abuse of discretion standard rather than de novo standard); EEOC v. Mr. Gold, Inc., 223 F.R.D. 100, 102 (E.D.N.Y.2004) (holding that a magistrate judge's resolution of discovery disputes deserves substantial deference and should be reversed only if there is an abuse of discretion).

Halsey v. Pfeiffer, No. 09-1138, 2010 WL 3735702, *1 (D.N.J. Sept. 17, 2010).

This discretion is guided, however, by certain basic principles. Thus, at the outset, it is clear that Rule 26's broad definition of that which can be obtained through discovery reaches only "nonprivileged matter that is relevant to any party's claim or defense." Therefore, valid claims of relevance and privilege still cabin and restrict the court's discretion in ruling on discovery issues. Furthermore, the scope of discovery permitted by Rule 26 embraces all "relevant information" a concept which is defined in the following terms: "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."

A party moving to compel discovery bears the initial burden of proving the relevance of the requested information. Morrison v. Philadelphia Housing Auth., 203 F.R.D. 195, 196 (E.D.Pa. 2001). Once that initial burden is met, "the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the broad scope of relevance as defined under Fed.R.Civ.P. 26(b)(1), . . . , (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure, [or seeks privileged information]." In re Urethane Antitrust Litigation, 261 F.R.D. 570, 573 (D.Kan. 2009).

Here, the corrections defendants argue that Victor's motion should first be denied because the polygraph examination report, which describes allegedly false statements made by Diffin regarding his involvement in a June 2008 assault upon Victor, is irrelevant. Given the broad reach of relevance defined by Rule 26 for discovery purposes, we disagree.

In reaching this result we acknowledge that, as a general rule, the results of a polygraph test are not admissible at trial. Foster v. Township of Hillside, 780 F. Supp. 1026, 1041 (D.N.J. 1992)(polygraph tests not admissible to prove truth), aff'd, Foster v. Hillside Police Dept., 977 F.2d 567 (3d Cir. 1992); EEOC v. Altmeyer's Home Stores, Inc., 672 F. Supp. 201(W.D. Pa. 1987)(evidence obtained through use of lie detector test inadmissible in employment case); United States v. Sherlin, 67 F.3d 1208, 1217 (6th Cir. 1995) (results of polygraph test properly excluded). However, this broad rule, disfavoring the admission of such evidence, is subject to narrow and specific exceptions, where courts have properly admitted polygraph results at trial. See Nawrocki v. Twp. of Coolbaugh, 34 F. App'x 832 (3d Cir. 2002)(court did not abuse discretion in admitting polygraph evidence for limited purpose). Therefore, we cannot conclude that the rule against admission of these test results is quite as categorical as the defendants assert.

In any event, the definition of relevant evidence for discovery purposes goes far beyond that which may be admitted at trial. Indeed, Rule 26 expressly states that: "*Relevant information need not be admissible at trial* if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1)(emphasis added). Considering Rule 26's broader view of relevant evidence, which embraces both evidence which is admissible at trial and disclosures that are reasonably calculated to lead to the discovery of admissible evidence, at least one court has expressly authorized the disclosure of polygraph test results on the grounds that these disclosures are reasonably calculated to lead to the discovery of other, admissible evidence. See Carter v. City of Philadelphia, No.97-4499, 2000 WL 1016653 (E.D. Pa. July 12, 2000).

Here, we find that, entirely aside from the issue of whether the polygraph results are themselves admissible at trial, the polygraph report would constitute relevant evidence since disclosure of that report "appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). The report would identify specific questions posed to defendant Diffin relating to the alleged assault on Victor in June 2008, and the answers Diffin gave in responses to those questions. Defendant Diffin's statements regarding this incident are admissions of a party-opponent on a matter of relevance to this litigation. See Fed. R. Evid.

801(d)(2). As admissions of a party-opponent regarding the incident that lies at the heart of this litigation, these statements, standing alone, may be both relevant and admissible at trial. Moreover, to the extent that Victor could show that Diffin's declarations to the polygrapher were false, the statements would be false exculpatory statements which are independently admissible as evidence of consciousness of guilt. Indeed, "it is well settled that untrue exculpatory statements may be considered as circumstantial evidence of the defendant's consciousness of guilty." United States v. Kemp, 500 F.3d 257, 296 (3d Cir. 2010). Thus, entirely aside from whether the polygraph test results are independently admissible, the contents of the polygraph report in terms of Diffin's statements made in response to specific questions relating to this episode, may well be admissible on two grounds. Therefore, we find that disclosure of the report "appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). The report is, therefore, relevant evidence for discovery purposes.

Having reached this judgment on the threshold issue of relevance, we must weigh these considerations of relevance against the governmental privilege recognized in federal court relating to investigative records. Cases acknowledging governmental privilege enjoin courts to balance the confidentiality of governmental files against the rights of a civil rights litigant by considering:

> (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any intra-departmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiffs suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the information sought to the plaintiffs case.

Frankenhauser v. Rizzo, 59 F.R.D. 339, 344 (E.D. Pa. 1973).

Applying this multi-faceted test, we find that the corrections defendants have not shown that this otherwise relevant evidence is cloaked in investigative privilege and should be withheld from the plaintiff. In reaching this result, we emphasize the unique factual context of our ruling. This ruling relates to a polygraph examination of defendant Diffin, who allegedly participated in an assault upon the plaintiff. The fact of the examination, and the overall deceptive results of the examination, have already been disclosed to Victor, as evidenced by Victor's attachment of reports containing these disclosures to his motion. Release of the report itself, therefore, would not disclose previously confidential investigative details of this case. Furthermore, since the report indicates that Diffin was found to be deceptive, the goal

of candor in internal investigative communications which informs this privilege is not undermined by this particular disclosure. In fact, the disclosure of this deception might promote candor in the future by showing that truthful internal communications may be entitled to greater protection under the privilege. Moreover, the report itself appears to contain both factual data, in the form of questions and answers, as well as evaluative information, in the form of the examiner's impressions. Therefore, this document is not the type of purely evaluative report, which may be entitled to greater confidentiality. Further, the evaluative aspect of the report– the finding of deception by Diffin– has already been disclosed to Victor. Finally, the plaintiff's allegations are plainly not frivolous as they relate to defendant Diffin, and this evidence could be significant and relevant to this case.

Taking all of these considerations into account, we find that the report is relevant as that term is broadly defined by Rule 26, and that disclosure of the report would not do violence to the principles underlying the investigative privilege. Therefore, we will order the disclosure of the report, while expressly noting that the report itself may not be admissible at trial, but may lead to discovery of other admissible evidence.

In closing we make one other observation. In the course of this litigation, Victor has filed a multitude of motions relating to pretrial matters, which have been

diligently addressed by the defendants and the Court. As part of our discretion governing discovery and other pretrial litigation, we have the authority and responsibility to set litigation deadlines. Further, rulings by a Magistrate Judge setting such deadlines rest in the sound discretion of the court. <u>Miller v. Ashcroft</u>, 76 F. App'x 457, 461 (3d Cir. 2003). Thus, a trial court's relating to control of its docket will not be disturbed " 'except upon the clearest showing that the procedures have resulted in actual and substantial prejudice to the complaining litigant' " <u>Id.</u>, (citations omitted). Moreover, any party challenging a ruling setting litigation deadlines "ha[s] a heavy burden to bear, . . ., as matters of docket control and conduct of [litigation] are committed to the sound discretion of the district court." <u>In re Fine Paper Antitrust Litigation</u> 685 F.2d 810, 817 (3d Cir. 1982)(citations omitted).

With these guiding principles in mind, we advise all parties that it is our view that pre-trial motions practice in this case should draw to a close, so that a trial may be promptly scheduled in this matter. Towards that goal, and mindful of mandate which guides this Court and motivates our system of justice: " that courts should strive to resolve cases on their merits whenever possible [but that] justice also requires that the merits of a particular dispute be placed before the court in a timely fashion" <u>McCurdy v. American Bd. of Plastic Surgery</u>, 157 F.3d 191, 197 (3d. Cir 1998)(affirming denial of request for extension of time), we are setting a deadline for

12

motions in this case of September 9, 2011, and directing that all remaining pretrial motions be filed, and briefed by the movant on or before September 9, 2011.

### IV.     Conclusion

For the foregoing reasons, the plaintiff's motion for relief, (Doc. 378), is GRANTED, the defendants are ORDERED to disclose this report on or before September 7, 2011, and all parties are ORDERED that all remaining pretrial motions be filed, and briefed by the movant on or before September 9, 2011.

So ordered this 26th day of August, 2011.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge