## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM VICTOR, | : |
| | :     No. 3:08-CV-1374 |
| **Plaintiff** | : |
| | : |
| v. | : |
| | :     **(Magistrate Judge Carlson)** |
| R.M. LAWLER, et al., | : |
| | : |
| **Defendants** | : |

## MEMORANDUM OPINION

The above-captioned action was commenced nearly four years ago, on July 21, 2008, by William Victor, an inmate who was formerly confined in the State Correctional Institution at Huntingdon ("SCI-Huntingdon"). In his complaint, Victor, who proceeded *pro se*,[1] initially named 29 defendants, including the prison superintendent and other employees of the Pennsylvania Department of Corrections at SCI-Huntingdon.

Victor's complaints in this litigation were, in some respects, far-reaching and embraced a host of seemingly disparate actors and events. At the heart of this

---

[1] For a brief period during this litigation, Victor was represented by court-appointed counsel. However, Victor later became dissatisfied with counsel's representation and litigation strategy. After counsel was granted leave to withdraw, Victor elected to proceed throughout the remainder of this action acting as his own counsel. As we have noted previously, Mr. Victor demonstrated himself to be a particularly able *pro se* advocate, both in his written submissions and in the courtroom.

complaint, however, rested a singular, significant incident:  Victor alleged that on June 28, 2008, he was assaulted by Corrections Officers while being moved between cells in the Restricted Housing Unit ("RHU") at SCI-Huntingdon.  There is no dispute that Victor's jaw was broken at some point during this incident, and required medical treatment outside the prison.  Victor alleged that some of the correctional staff endeavored to cover up and conceal the true facts surrounding this episode, and that the incident was staged in retaliation for Victor having been a troublesome inmate who had filed a number of grievances or civil actions against corrections officers or employees.

Following amended pleadings, extensive litigation, and the resolution of dispositive motions, the Court found that four of Victor's claims against nine defendants should be permitted to proceed to trial.[2]  In summary, the Court found that genuine disputed issues of fact existed with respect to Victor's claims against seven corrections officers, one former lieutenant, and one prison nurse for violations of the First and Eighth Amendments to the United States Constitution, and for civil conspiracy in violation of 42 U.S.C. § 1983.  Accordingly, from May 21, 2012, through Tuesday, May 29, 2012, the Court presided over a jury trial held in Scranton,

---

[2] The remaining eight defendants were:  Lieutenant William Diffin; Nurse Hallie Ritchie; and Correctional Officers Adam Goodman, Nathan Lehman, Anthony Eberling, Jason Pyle, Noah Grove, David Plummer, and Joseph Snyder.

Pennsylvania in which Victor presented his claims that corrections staff conspired to subject him to cruel and unusual punishment, and deliberate indifference to his serious medical needs, in violation of the Eighth Amendment, as well as claims that these Defendants subjected him to this treatment in retaliation for Victor's exercise of First Amendment protected activity.

Following jury selection and five days of evidence, the jury was brought back to the Court on Tuesday, May 29, 2012, following the Memorial Day holiday. On that day the jury heard closing arguments, was instructed on the law, and was thereafter released to deliberate. After several hours of deliberation, the jury returned a unanimous verdict in favor of the Defendants on all claims. (Doc. 570) Judgment was accordingly entered in favor of Defendants Goodman, Pyle, Snyder, Eberling, Plummer, Grove, Lehman, Diffin, and Ritchey on May 29, 2012. (Doc. 571)

On June 1, 2012, Mr. Victor filed a notice of appeal with the United States Court of Appeals for the Third Circuit. On the same day, Victor filed a motion to stay the appeal proceedings in order to give him an opportunity to scrutinize the records taken during certain pretrial hearings so that he could present the Third Circuit with a cogent and comprehensive argument in support of his view that he was unfairly prejudiced during the trial in this action. (Doc. 573) On the same day, the Court denied Victor's motion to stay his appeal, finding it inappropriate to enter an

order affecting proceedings that had been commenced within the Court of Appeals, and we encouraged Victor to request a stay of his appellate proceedings directly from the Third Circuit. (Doc. 576)

On June 7, 2012, Victor filed a motion with this Court seeking to set aside the verdict and to be granted a new trial on his claims. (Doc. 577) In his brief filed in support of the motion, Mr. Victor asserts that the jury's verdict was against the weight of the evidence, and that the jury's verdict somehow was reached "with prejudicial clarity." (Doc. 578) In addition, Mr. Victor contends that the jury did not properly and fairly apply the law in accordance with the instructions that the Court provided, and that a new trial should therefore be granted in the interest of justice. (Id.)

Upon consideration of Mr. Victor's motion for a new trial, we find no merit to his assertions that the trial proceedings or the jury's verdict were manifestly unfair, or so unreasonable as to shock the conscience. To the contrary, the Court finds – and the record will attest – that the litigation in this case, and the trial that marked its conclusion, were conducted fairly and appropriately, and the jury's verdict was a product of this fair and appropriate process. There being no basis to set aside the jury's verdict and to order a new trial in this matter, the motion will be denied.

**II.  DISCUSSION**

Victor argues that a jury's unanimous verdict against him on all claims should be discarded, and a new trial ordered, on the basis of his view that the verdict reached was against the weight of the evidence, and because the trial proceedings and the jury's verdict were erroneous or infected with prejudicial error.  We disagree.

Rule 59 of the Federal Rules of Civil Procedure provides, in pertinent part, as follows:

> (a) In General.
>
> (1) Grounds for a New Trial.  The court may, on motion, grant a new trial on all or some of the issues – and to any party – as follows:
>
> (A) after a jury trial, for any reason for which a new trial was heretofore been granted in an action in federal court . . . .

Fed. R. Civ. P. 59(a).  Although a court may set aside a jury's verdict on the grounds that it was against the weight of the evidence, "the court's power to overturn the jury's [decision for this reason] is severely circumscribed." Henry v. Hess Oil Virgin Islands Corp., 163 F.R.D. 237, 242 (D.V.I. 1995).  Thus, "'[n]ew trials because the verdict is against the weight of the evidence are proper only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience.'" Greenleaf v. Garlock,

Inc., 174 F.3d 352, 366 (3d Cir. 1999) (quoting <u>Williamson v. Consolidated Rail Corp.</u>, 926 F.2d 1344, 1353 (3d Cir. 1991)). In general, a "new trial must be necessary to avoid a miscarriage of justice." <u>Shanno v. Magee Indus. Enterprises, Inc.</u>, 856 F.2d 562, 567 (3d Cir. 1988). Accordingly, in order to overturn a jury's verdict as unsupported by the evidence, the verdict must be "so unreasonable as to offend the conscience of the court." <u>Murray v. Morse</u>, 610 F.2d 149, 152 (3d Cir. 1979).

In the face of this formidable standard, Mr. Victor's arguments simply fail. He asserts that he "attended this trial for six days and presented ample evidence that proved by a preponderance of the evidence defendants were liable . . . ." (Doc. 578) The obvious rejoinder to this assertion is that jury – the factfinder entrusted with evaluating all of the evidence presented – found otherwise. Although we agreed with Mr. Victor that there existed disputed issues of fact which necessitated a trial on his remaining claims, we firmly disagree that the evidence presented at trial was so clearly in his favor as to require that he prevail on his claims. Furthermore, although Mr. Victor presented considerable evidence in support of his claims, much of this evidence was contradicted, and much of it was presented in the form of testimony from the plaintiff himself and inmate witnesses, all of whose credibility was challenged by the defense through cross examination.

It was manifestly the jury's province to consider the competing evidence, to weigh the testimony and witness credibility, and to apply the law as it was given to them to the claims in the case. In the Court's estimation, the jury faithfully discharged its obligations in this regard, and in doing so resolved disputed issues in favor of the Defendants. Mr. Victor's disappointment with the result at trial, or the jury's evaluation of the competing evidence presented, while understandable, does not warrant the granting of a new trial on the basis that the great weight of the evidence supported his claims.

Representing his own view that the evidence supporting his claims was "obvious", Mr. Victor speculates and concludes that the jury's verdict must have been reached through improper consideration of the criminal histories of Mr. Victor and several of his witnesses. (Id.) In addition, Mr. Victor generally claims, with no specificity, that he was prevented from speaking or raising objections "at a critical juncture," perhaps regarding the fact that his witnesses testified that they were incarcerated for homicides and other offenses. The Court finds these casual assertions provide no support for Victor's motion for a new trial, and finds further that the evidence presented regarding the fact that some of Mr. Victor's witnesses are

incarcerated for felonies was properly introduced in a limited manner in accordance with Rule 609 of the Federal Rules of Evidence.[3]

Building upon his theme that the Court and jury were prejudiced against him, Victor argues that he should be granted a new trial because

> The Court and the jury sat and witnessed numerous defendants lie under oath and change their testimony and yet ignored that, the law, and issued a verdict of a clear and prejudicial foundation which was also improperly influenced by the defendants closing arguments and the judges [sic] instructions to "use our crimes to come to or change our opinion when deliberating" which the record is clear on they took to heart.

(Doc. 578, at 2)  As we understand this argument, Mr. Victor is claiming that the jury's prejudice against him can be seen because the jury resolved questions of witness credibility in a way that was unfavorable to Mr. Victor.  It is, of course, the jury's job to weigh witness credibility, and to determine what testimony to credit.  That they discharged this obligation, and reached conclusions with which Mr. Victor disagrees is plainly no basis for a new trial.

---

[3] We further observe that during his direct examination of two of his witnesses, Mr. Victor himself elicited admissions that the witnesses were incarcerated following homicide convictions that they are contesting on appeal. We can hardly conclude that the Mr. Victor was unduly prejudiced by defense counsel inquiring about felony convictions in accordance with Rule 609, when Mr. Victor drew out precisely the same information through his own questioning of his witnesses.

We also understand Mr. Victor to be arguing that the Court and defense counsel placed undue emphasis on the fact that Mr. Victor and his witnesses had committed felonies, and improperly encouraged the jury to consider this fact. Again, we disagree.

As a threshold matter, Mr. Victor's characterization of the manner in which the Court instructed the jury is inaccurate, as is his recollection of defense counsel's emphasis of this issue. Over Mr. Victor's initial objection, the Court admitted evidence that Mr. Victor and his inmate witnesses had been convicted of committing felonies within the previous ten years. The Court found that the admission of such limited impeachment evidence – some of which was actually elicited on direct examination by Mr. Victor himself – was appropriate under Rule 609(a) and was not unfairly prejudicial when introduced in a limited manner.

The Court also took steps to limit any potential prejudice that might be attributed to this evidence by specifically instructing the jury regarding the very limited way in which the evidence should be considered. Rather than providing an example of unfair prejudice, the Court's jury instructions regarding evidence of past felony convictions was given specifically to limit the jury's consideration of this evidence, and was itself modeled after Section 2.1 of the Third Circuit Model Jury Instructions. Following this appellate court guidance, the Court instructed as follows:

> You have heard evidence that various inmate witnesses have been convicted of felonies. You may use that evidence only to help you decide whether to believe the testimony of the witness and to determine how much weight to give it. That evidence does not mean that the witness engaged in any conduct alleged in this case, and you must not use that evidence as any proof that the witness engaged in that conduct.

We continue to find this accepted instruction was appropriately given in this case following the proper admission of limited evidence regarding witness felony convictions, and provides no grounds for a new trial.[4]

---

[4] We are also constrained to observe that all parties, including Mr. Victor, were furnished with copies of Court's proposed instructions on May 21, 2012, more than one week prior to the commencement of trial. The parties were provided a copy of the Court's final instructions at the conclusion of trial, and these instructions had little substantive difference from the proposed instructions that had previously been provided to the parties for comment or objection. Mr. Victor lodged no objection with the proposed instructions or those that were given to the jury. Rule 51 of the Federal Rules of Civil Procedure requires that a party who objects to an instruction, or the failure to given an instruction, must do so on the record, and state clearly the matter objected to and the grounds for the objection. Fed. R. Civ. P. 51(c)(1). Such an objection must be lodged on the record, and out of the jury's hearing, before the instructions are provided to the jury. Fed. R. Civ. P. 51(b)(2). If a party does not comply with this objection procedure, and therefore fails to preserve such an objection for later review, a court is limited to considering whether there was "plain error" in the instructions given. Fed. R. Civ. P. 51(d)(2); Cooper Distributing Co., Inc. v. Amana Refrigeration, Inc., 180 F.3d 542, 549-50 (3d Cir. 1999). In this case, Mr. Victor failed to timely object to the instructions that were provided to the jury, despite having had ample opportunity to do so. As a result, we conclude he has failed to preserve any objection to the instructions that the jury was provided regarding their consideration of prior felony convictions by witnesses. Furthermore, we do

Furthermore, we note that the instructions given to the jury, taken as a whole, devoted far greater attention to providing the jury with guidance regarding the methods of impeachment utilized by Victor with respect to the defendants and defense witnesses at trial. Thus, we provided specific instructions to the jury concerning impeachment of witnesses by prior inconsistent statements, use of party admissions at trial, and the inferences that the jury could draw from false exculpatory statements. These instructions, which addressed the Plaintiff's theory of his case, were also specifically tailored after the Circuit's model instructions, and provided the jury with the complete legal guidance it needed to assess the credibility of all witnesses at trial. Therefore, there is simply no basis for Victor to claim that these impeachment and witness credibility instructions were inaccurate, incomplete, confusing or unfairly slanted in favor of any party.

As for Victor's general claim that he was prevented from speaking or raising objections "at a critical juncture," the record of these proceedings thoroughly rebuts this claim. Quite the contrary, the Court repeatedly afforded Victor the opportunity

---

not find that the Court plainly erred by providing the jury with the limiting instruction on this issue that was approved in the Third Circuit Model Jury Instructions.

to raise objections, address matters outside the presence of the jury, and present concerns at side-bar. In sum, Victor was given every reasonable opportunity to present his claims, and raise legal concerns which he had during the course of this trial.

Finally, Mr. Victor claims that he was prejudiced at the conclusion of trial when the Court permitted one defendant, William Diffin, to waive his appearance for closing arguments and jury deliberations due to personal obligations outside of Pennsylvania.[5] While the precise tenor of this claim is unclear, Victor may be implying that a defendant in a civil lawsuit cannot waive his presence at closing argument or jury deliberations. If this is Victor's claim, then we disagree. Indeed, we note that in the context of criminal cases, where there is a constitutional dimension to the defendant's presence at trial, it is entirely clear that a defendant may waive his presence at closing argument. See Fed. R. Crim. P. 43. Therefore, we find that Defendant Diffin could waive his right to be present and make a closing argument in this case, and further conclude that Diffin made a knowing waiver of

---

[5] Mr. Diffin was present for five days of trial the preceding week. Notably, the parties had estimated that the case would take three to five days to try, and the defense presented no rebuttal witnesses or other evidence. Thus, Mr. Diffin was present for the entirety of Plaintiff's case-in-chief, and participated actively in trial throughout that week while serving as his own counsel. In the end, the Plaintiff took five full days to present his case, leaving no time for argument, instructions, or deliberation until after the Memorial Day holiday.

these rights following a searching colloquy by the Court, conducted in the presence of all parties, including Victor, none of whom objected to the procedure used by the Court.

Further, upon consideration, the Court cannot perceive how this Defendant's absence prejudiced Mr. Victor. Indeed, after thoroughly questioning Mr. Diffin regarding his request for permission not to attend the final day of trial on May 29, 2012, the Court carefully admonished Mr. Diffin that his attendance was important, and that his failure to attend would cause him to waive his right to present further evidence, make final arguments, rebut Mr. Victor's own closing argument, or otherwise object to the final jury instructions. The Court engaged in an extensive colloquy with this Defendant precisely because of the prejudice his absence could have caused to him, not to the Plaintiff. Following this colloquy, the Court granted Mr. Diffin's request only after cautioning him on the record, outside of the jury's presence, regarding the potential consequences that could have attended his election not to appear.

Mr. Victor did not object to Mr. Diffin's request, nor did Mr. Victor articulate at trial how Mr. Diffin's absence during closing arguments and jury instructions was prejudicial to the Plaintiff's case. Similarly, in his motion Mr. Victor has failed to explain how Mr. Diffin's absence at closing arguments caused the trial in this case

to be manifestly unfair. Mr. Victor had a full and adequate opportunity to examine Mr. Diffin as a witness during the trial and to present argument in support of his claims against him. Indeed, Diffin's absence at closing arguments could only have redounded to Victor's benefit since it allowed Victor to argue, without contradiction by Diffin, the nature and extent of Diffin's liability in this matter. Although Mr. Victor expresses dissatisfaction with Mr. Diffin's failure to attend certain pretrial hearings, or otherwise in the way in which Mr. Diffin litigated this action prior to trial, we find that these matters provide no basis to require a new trial on Mr. Victor's claims.

## III. ORDER

Accordingly, upon consideration of Mr. Victor's motion for a new trial (Doc. 577), and the Court finding no basis to grant the requested relief, and for the reasons set forth above, IT IS HEREBY ORDERED THAT the motion is DENIED.

*/s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

Dated: June 12, 2012